[No. B188129. Second Dist., Div. Eight. Dec. 13, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
RICKY CONLEY WILLIAMS, Defendant and Appellant.

COUNSEL

Rodney Richard Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Mary Jo Graves, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Mary Sanchez and April S. Rylaarsdam, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**BOLAND, J.—**

## INTRODUCTION

Appellant Ricky Conley Williams challenges his carrying a loaded firearm conviction on the ground the trial court erred by denying his suppression motion. We conclude that impounding appellant's car, which was legally parked in front of his residence, was unconstitutional, as it served no community caretaking purpose. The subsequent inventory search of the car therefore also was unconstitutional, and the trial court erred by denying appellant's suppression motion.

## BACKGROUND AND PROCEDURAL HISTORY

Santa Monica Police Department Officer Derek Morton saw appellant driving without a seatbelt. He followed appellant's car and turned on the overhead lights on his police car. Appellant parked at the curb in front of his residence. Appellant provided Morton with a valid driver's license, but did not have the registration or proof of insurance for the car, which was a rental. Morton determined from his computer check that there was an outstanding arrest warrant for appellant. He placed appellant under arrest, impounded appellant's car, and searched it. Morton found a loaded gun inside a bag on the backseat.

A jury convicted appellant of carrying a loaded firearm, but could not reach a verdict on two other counts. The court declared a mistrial with respect to those counts, which were later dismissed. The court suspended imposition of sentence and placed appellant on formal probation.

## DISCUSSION

Prior to trial, appellant moved to suppress the gun as the product of an illegal seizure and search of the car.

At the hearing on the suppression motion, Morton testified he saw appellant driving a car in Santa Monica, and could see that appellant was not wearing his seatbelt. Morton made a U-turn, followed appellant, and activated the overhead lights on the police car to conduct a traffic stop. Appellant pulled over and parked his car at the curb in front of a residence. Appellant provided Morton with a valid driver's license, but did not have proof of insurance or the car's registration. While they were speaking, Morton recognized appellant as a person he had stopped and cited several months earlier. Morton checked his computer and discovered that there was an outstanding warrant for appellant's arrest.[1] The car was validly registered to a car rental company and had not been reported stolen. Appellant did not show Morton an agreement for the car rental.

Morton placed appellant under arrest on the outstanding warrant. Other officers took appellant to the police station. Morton impounded appellant's car under Vehicle Code section 22651, subdivision (h)(1) because "the driver

---

[1] Later, at the station, Morton realized that the arrest warrant stemmed from the citation he had issued to appellant months earlier.

in control of that vehicle was being arrested." The residence in front of which appellant parked the car was appellant's own residence, which Morton knew at the time. The car was legally parked, though it was some distance away from the curb.[2] It was not a traffic hazard. Morton knew the car was legally parked. Other cars were also parked on the street. Morton had no reason to believe that the car had been stolen or that appellant did not legally possess it. Morton admitted the car could have been locked and left right where appellant parked it, but he did not give appellant the opportunity to do so. He immediately decided to impound the car.

The parties stipulated that the Santa Monica Police Department did not have a written policy addressing when a car should be impounded. Morton testified that no such policy existed, and the decision was left entirely to each officer's discretion. He had never been given "any direction about what factors to consider when exercising that discretion." Morton considered whether the vehicle was legally in the driver's possession, but he "almost always impound[ed] a vehicle if the driver of that vehicle is arrested in or about that vehicle." He "usually" exercised "a little leniency" if there were "extenuating circumstances," such as small children present in the vehicle, the status of the vehicle as a family's sole transportation to work or school, or the availability of another person with a valid license to drive the vehicle where the original driver lacked a valid license. That a validly licensed driver in legal possession of the car parked legally in front of his own home was irrelevant to Morton's decision to impound.

The trial court denied the suppression motion. It expressly found Morton had probable cause to detain appellant for a traffic infraction, and the seizure of the car was proper because Vehicle Code section 22651, subdivision (h) authorized the seizure, and it was "unclear what the term of the rental agreement was."[3]

Appellant contends the trial court erroneously denied his suppression motion because impounding the car violated the Fourth Amendment. He does

---

[2] Morton admitted his preliminary hearing testimony that appellant's car was "double-parked" was incorrect. He explained that, at the time of his testimony, he did not understand what "double-parked" meant.

[3] The prosecution did not attempt to justify the warrantless search as one incident to appellant's arrest. (*Chimel v. California* (1969) 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034]; *New York v. Belton* (1981) 453 U.S. 454 [69 L.Ed.2d 768, 101 S.Ct. 2860].) Morton did not claim that concerns regarding officer safety led him to search the car. Instead, his sole asserted justification was to inventory the car's contents because he was impounding it. The trial court did not consider this theory, and respondent does not address it in its brief. Accordingly, we do not consider such a theory, which may not have been supported by the facts, as the car may have been searched after appellant was transported to the police station.

not challenge the legality of the traffic stop or his custodial arrest. Nor does he challenge the manner in which Morton conducted the inventory search.

■  The Fourth Amendment to the United States Constitution protects people from unreasonable government intrusions into their legitimate expectations of privacy.  ■  A warrantless search is presumed to be illegal. (*Mincey v. Arizona* (1978) 437 U.S. 385, 390 [57 L.Ed.2d 290, 98 S.Ct. 2408].) The prosecution always has the burden of justifying the search by proving the search fell within a recognized exception to the warrant requirement. (*In re Tyrell J.* (1994) 8 Cal.4th 68, 76 [32 Cal.Rptr.2d 33, 876 P.2d 519], overruled on other grounds in *In re Jaime P.* (2006) 40 Cal.4th 128 [51 Cal.Rptr.3d 430].)

■  In ruling upon a motion to suppress, the trial court judges the credibility of the witnesses, resolves any conflicts in the testimony, weighs the evidence, and draws factual inferences. We will uphold the court's express and/or implied findings on such matters if they are supported by substantial evidence, but we independently review the application of the relevant law to the facts. (*People v. Alvarez* (1996) 14 Cal.4th 155, 182 [58 Cal.Rptr.2d 385, 926 P.2d 365].)

■  As part of their " 'community caretaking functions,' " police officers may constitutionally impound vehicles that "jeopardize . . . public safety and the efficient movement of vehicular traffic." (*South Dakota v. Opperman* (1976) 428 U.S. 364, 368–369 [49 L.Ed.2d 1000, 96 S.Ct. 3092] (*Opperman*).) Whether "impoundment is warranted under this community caretaking doctrine depends on the location of the vehicle and the police officers' duty to prevent it from creating a hazard to other drivers or being a target for vandalism or theft." (*Miranda v. City of Cornelius* (9th Cir. 2005) 429 F.3d 858, 864.) If officers are warranted in impounding a vehicle, a warrantless inventory search of the vehicle pursuant to a standardized procedure is constitutionally reasonable. (*Opperman, supra,* 428 U.S. at p. 372.) When an inventory search is conducted based on a decision to impound a vehicle, we "focus on the purpose of the impound rather than the purpose of the inventory," since an inventory search conducted pursuant to an unreasonable impound is itself unreasonable. (*People v. Aguilar* (1991) 228 Cal.App.3d 1049, 1053 [279 Cal.Rptr. 246].) Although a police officer is not required to adopt the least intrusive course of action in deciding whether to impound and search a car (*Colorado v. Bertine* (1987) 479 U.S. 367, 374 [93 L.Ed.2d 739, 107 S.Ct. 738] (*Bertine*)), the action taken must nonetheless be reasonable in light of the justification for the impound and inventory exception to the

search warrant requirement. Reasonableness is "[t]he touchstone of the Fourth Amendment." (*Florida v. Jimeno* (1991) 500 U.S. 248, 250 [114 L.Ed.2d 297, 111 S.Ct. 1801].)

■ Morton, the trial court, and respondent relied upon Vehicle Code section 22651, subdivision (h)(1), as authority for impounding appellant's car. While the statute authorizes law enforcement officers to "remove" a vehicle when they make a custodial arrest of a person "driving or in control of" the vehicle, this statutory authorization does not, in and of itself, determine the constitutional reasonableness of the seizure. (Veh. Code, § 22651, subd. (h)(1); see *Sibron v. New York* (1968) 392 U.S. 40, 61 [20 L.Ed.2d 917, 88 S.Ct. 1889].) Accordingly, respondent errs in arguing that the statutory authorization for the impoundment satisfied all constitutional requirements.

The prosecution, which had the burden of establishing that impounding appellant's car was constitutionally reasonable under the circumstances, made no showing that removal of the car from the street furthered a community caretaking function. Morton admitted that the car was legally parked in front of appellant's residence, appellant had a valid driver's license, the car was properly registered to a car rental company, the car had not been reported stolen, and he had no reason to believe appellant was not in lawful possession of the car.

Respondent argues that Morton was not certain whether appellant legally possessed the car. In support, respondent cites Morton's trial testimony that it can take a month for a rental car company to report that its car has been stolen. This evidence was irrelevant, as it was not before the court at the earlier suppression hearing. Moreover, Morton admitted he had no grounds for believing the car was stolen. To validate an impoundment on the basis of such unfounded speculation would abolish any expectation of privacy in a rental car and would permit unchecked police harassment of persons driving hired cars.

■ No community caretaking function was served by impounding appellant's car. The car was legally parked at the curb in front of appellant's home. The possibility that the vehicle would be stolen, broken into, or vandalized was no greater than if Morton had not stopped and arrested appellant as he returned home. In this regard, it is significant that other cars were parked on the street and that it was a residential area. The prosecution made no showing

that the car was blocking a driveway or crosswalk, or that it posed a hazard or impediment to other traffic. Because appellant had a valid driver's license and the car was properly registered, it was not necessary to impound it to prevent immediate and continued unlawful operation. (Cf. *People v. Benites* (1992) 9 Cal.App.4th 309 [11 Cal.Rptr.2d 512] [impoundment proper where neither driver nor passenger had valid driver's license]; *People v. Burch* (1986) 188 Cal.App.3d 172 [232 Cal.Rptr. 502] [impoundment proper where car's registration tag was expired and driver's license was suspended].) No other justification that would further a community caretaking function was offered or supported by evidence. Indeed, Morton admitted he decided to impound the car simply because he was arresting appellant and almost always impounded the cars of drivers he arrested. The prosecution simply did not establish that impounding appellant's car served any community caretaking function. It therefore failed to establish the constitutional reasonableness of the seizure and subsequent inventory search.

Citing *Bertine*, respondent argues the seizure was permissible because it was conducted according to standard criteria, namely, Vehicle Code section 22651, subdivision (h)(1). However, *Bertine* did not abandon the community caretaking function rationale of *Opperman*. Indeed, *Bertine* cited *Opperman* and the community caretaking purposes articulated therein. (*Bertine, supra*, 479 U.S. at pp. 371–372.) The *Bertine* court noted that the Boulder police exercised their discretion to impound Bertine's van "in light of standardized criteria, related to the feasibility and appropriateness of parking and locking a vehicle rather than impounding it." (*Id.* at pp. 375–376.) The court further explained that the officers acted according to a Boulder police directive establishing "several conditions that must be met before an officer may pursue the park-and-lock alternative. For example, police may not park and lock the vehicle where there is reasonable risk of damage or vandalism to the vehicle or where the approval of the arrestee cannot be obtained. [Citation.] Not only do such conditions circumscribe the discretion of individual officers, but they also protect the vehicle and its contents and minimize claims of property loss." (*Id.* at p. 376, fn. 7.)

Clearly, *Bertine* does not validate any impoundment that falls within Vehicle Code section 22651. The impoundment must still serve a community caretaking function. At best, the statute may constitute a standardized policy guiding officers' discretion. It does not, however, end the inquiry. By Morton's own admission, he impounded appellant's car simply because he was taking appellant into custody. Morton did not assert any community caretaking justification for the impoundment, and in light of the evidence at the hearing, no such justification existed.

## DISPOSITION

The judgment is reversed.

Rubin, Acting P. J., and Flier, J., concurred.