Filed 11/24/21; Certified for Publication 12/16/21 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| DERRICK J. BLAKES, | C093856 |
| Petitioner, | (Super. Ct. No. 19FE022202 ) |
| v. | |
| THE SUPERIOR COURT OF SACRAMENTO COUNTY, | |
| Respondent; | |
| THE PEOPLE, | |
| Real Party in Interest. | |

In this mandamus action, petitioner Derrick J. Blakes seeks review of the denial of his motion to suppress the fruits of a search of his car following a traffic stop.  He claims

1

the trial court erred in finding the warrantless search supported by probable cause and was a valid impound search. We agree.

The facts adduced by the officers before the warrantless entry of the car; illegally tinted windows, defendant taking one-tenth of a mile to pull over and stop, the smell of marijuana emanating from the car, his having a suspended license, and his having a prior arrest for felon in possession of a firearm, do not provide probable cause that contraband or evidence of illegal activity was in the car. The evidence shows the impound decision was based on an investigative pretext rather than serving a community caretaking function.

We shall issue the writ and remand with directions to grant the suppression motion.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts of the search are taken from the combined preliminary hearing and hearing on the suppression motion.

On December 11, 2019, Sacramento County Sheriff's Deputies Nicholas Sareeram and Joshua Langensiepen were assigned to the gang suppression unit and were patrolling in their marked vehicle when they spotted a gold Chevy Impala with tinted windows in violation of the Vehicle Code. Positioning their patrol car behind the Impala, they ran a records check and determined the Impala was owned and being driven by petitioner, whose license was suspended.

Detective Sareeram initiated a traffic stop based on the window tint violation and driving with a suspended license. Petitioner drove for about one-tenth of a mile before pulling over into a parking lot and legally parking the Impala. The Impala was not blocking any traffic and in a safe location. In Detective Sareeram's experience, most people pulled over more quickly than petitioner did. The Impala's windows were one-third to halfway down; the detectives were able to observe petitioner until and after the car stopped.

2

The detectives contacted petitioner and told him he was driving on a suspended license and an illegally tinted front window. Petitioner showed the detectives a Department of Motor Vehicles (DMV) printout showing his license was suspended; he told them he had just been to the DMV trying to resolve the matter. Detective Sareeram smelled the odor of marijuana coming from petitioner's car but did not know if it was freshly burned or whether the marijuana had been extinguished during the extra time it took for petitioner to pull over.

Detective Sareeram asked petitioner to exit the Impala. Petitioner initially declined, raising the detective's suspicions, but he eventually complied with the directive to leave his car. Based on the smell of marijuana and previous firearm arrest, Detective Sareeram conducted a patdown search of petitioner, which yielded nothing. The detectives decided to tow the car, with Detective Langensiepen calling for a tow. Both detectives testified that it was common to tow the vehicle of someone driving on a suspended license in order prevent the person from continuing to drive. The policy for impounding vehicles in such situation was that the officer made the determination on a case-by-case basis. Officers would sometimes allow detainees to retrieve their vehicle; Detective Sareeram did not afford petitioner this opportunity because "the totality of the circumstances" caused him to believe "something else was going on besides just a suspended license."

Following the patdown, Detective Sareeram told petitioner he would be searching the interior of the Impala because he had smelled burnt marijuana from within the car and his license was suspended. The detective had asked petitioner if he had any marijuana in the car, but defendant did not respond. Detective Sareeram testified that the smell of the burnt marijuana weighed heavily in his decision to search the car, but that they would be conducting an "inventory search incident to a tow . . . ". He thought the smell of burned marijuana gave him probable cause to search the vehicle, and admitted he had no information indicating whether petitioner was impaired or how recently the marijuana

3

had been burned. He had not performed a field sobriety test or any other test to determine whether petitioner was under the influence of marijuana or another controlled substance.

During the search of the Impala, Detective Sareeram first found a burnt marijuana cigarette sticking out of the trash receptacle in the center console. Removing the trash receptacle and lid uncovered more marijuana cigarettes in the trash can. A digital scale with green and white residue on top and prescription bottles were in the center console. On the floorboard there was a glass jar which contained marijuana with at least one bag tied in a knot. An empty handgun holster was found in the back seat. When shown the holster and asked if there was a gun in the car, petitioner said he knew nothing about the holster or any gun. A handgun was found on the rear driver's side seat. Also in the car was a black backpack containing different identification cards, driver's licenses, and credit cards.

Petitioner was arrested and put in handcuffs after the gun was found. The Impala was subsequently towed.

Petitioner was charged with felon in possession of a firearm (Pen. Code, § 29800, subd. (a) (1)),[1] driving without a valid license (Veh. Code, § 12500, subd. (a), appropriation of lost property by finder, § 485), and possession of a controlled substance (Bus. & Prof. Code, § 4060), along with a serious felony and a strike allegation (§§ 1192.7, subd. (c), 1170.12).

On November 6, 2020, petitioner filed a motion to suppress, to be heard contemporaneously with the preliminary hearing. The magistrate denied the motion, finding the search was the product of a lawful impound and supported by probable cause

---

[1] Undesignated statutory references are to the Penal Code.

4

that petitioner was driving under the influence of marijuana or with an open container of marijuana. The magistrate also held petitioner to answer on the charges.

On March 8, 2021, petitioner filed a section 1538.5 motion to suppress evidence with the trial court. On March 19, 2021, the trial court heard oral argument and denied the motion.

Petitioner subsequently filed a timely mandamus petition with this court.

DISCUSSION

Petitioner contends the suppression motion should have been granted. The standard of review here is well-established.

The Fourth Amendment guarantees the right to be free of unreasonable searches and seizures by law enforcement personnel. (U.S. Const., 4th Amend.) When police conduct a search or seizure without a warrant, the prosecution has the burden of showing the officers' actions were justified by an exception to the warrant requirement. (*People v. Camacho* (2000) 23 Cal.4th 824, 830.)

Because the initial motion to suppress was made during the preliminary hearing, and the renewed motion before the trial court was submitted on the transcript of that hearing pursuant to section 1538.5, subdivision (i), we disregard the findings of the trial court and review the determination of the magistrate who ruled on the initial motion. "We review the evidence in the light most favorable to the magistrate's ruling and will uphold the magistrate's express or implied findings if supported by substantial evidence. [Citation.]" (*People v. Nonnette* (1990) 221 Cal.App.3d 659, 664.) "The question of whether a search was unreasonable, however, is a question of law. On that issue, we exercise 'independent judgment.' [Citation.]" (*People v. Camacho, supra*, 23 Cal.4th at p. 830.)

One exception to the warrant requirement is where an officer has probable cause to believe contraband or evidence of a crime is in an automobile. (*Carroll v. United States* (1925) 267 U.S. 132, 149 [69 L.Ed. 543, 549].) Another exception is for inventory

5

searches of an impounded vehicle.  (*Colorado v. Bertine* (1987) 479 U.S. 367, 371 [93 L.Ed.2d 739, 741] (*Colorado*).)

We discuss these two exceptions, which are the justifications asserted by the People for the warrantless search of petitioner's car, in turn.

I

*The Search was not Supported by Probable Cause*

The automobile exception provides "police who have probable cause to believe a lawfully stopped vehicle contains evidence of criminal activity or contraband may conduct a warrantless search of any area of the vehicle in which the evidence might be found.  [Citations.]"  (*People v. Evans* (2011) 200 Cal.App.4th 735, 753.)  Once an officer has probable cause to search the vehicle under the automobile exception, an officer "may conduct a probing search of compartments and containers within the vehicle whose contents are not in plain view."  (*United States v. Ross* (1982) 456 U.S. 798, 800 [72 L.Ed.2d 572, 578].)  Probable cause to search exists "where the known facts and circumstances are sufficient to warrant a [person] of reasonable prudence in the belief that contraband or evidence of a crime will be found [citation.]"  (*Ornelas v. United States* (1996) 517 U.S. 690, 696 [134 L.Ed.2d 911, 918].)

In 2016, the voters passed Proposition 64, the Control, Regulate and Tax Adult Use of Marijuana Act, which legalized the possession of up to 28.5 grams of cannabis by individuals 21 years or older.  (Health and Saf. Code, § 11362.1, subd. (a)(1).)  The use and possession of cannabis is not unconditional, however; there are various statutory provisions proscribing such use and possession in certain circumstances.  (See Health and Saf. Code, § 11362.3; Veh. Code, § 23222, subd. (b).)  Notwithstanding any other proscription by law, Health and Safety Code section 11362.1, subdivision (c) provides that "[c]annabis and cannabis products involved in any way with conduct deemed lawful by this section are not contraband nor subject to seizure, and no conduct deemed lawful by this section shall constitute the basis for detention, search, or arrest."  Thus, this

6

provision does not apply when the totality of the circumstances gives rise to a fair probability that an existing cannabis regulation was violated when the search occurred. (*People v. Fews* (2018) 27 Cal.App.5th 553, 563.)

This court and other courts have found Proposition 64 changed whether possession of cannabis by itself could be the basis for probable cause to search a car. (See *People v. Johnson* (2020) 50 Cal.App.5th 620, 629; *People v. McGee* (2020) 53 Cal.App.5th 796, 802.) In particular, section 11362.1, subdivision (c), "fundamentally changed the probable cause determination by specifying lawfully possessed cannabis is 'not contraband' and lawful conduct under the statute may not ' "constitute the basis for detention, search or arrest." ' [Citation.]" (*People v. Hall* (2020) 57 Cal.App.5th 946, 954.) But this applies only to activities "deemed lawful" by Proposition 64. (*Johnson*, at p. 629.) Thus, even after the enactment of Proposition 64, there is probable cause to search a vehicle if a law enforcement official sees a legal amount of cannabis in an illegal setting, such as in an open container while the car is being driven. (See *McGee*, at p. 804, [probable cause to search vehicle after an officer "witnessed the passenger in possession of an unsealed container of [cannabis] in violation of [Health and Safety Code] section 11362.3, subdivision (a)(4)"].)

There are two possible illegal uses of marijuana that could have supported probable cause to believe a crime involving marijuana was being committed, had there been sufficient evidentiary support, driving under the influence of marijuana (Veh. Code, § 23152, subd. (a)) and driving with an open container of marijuana (Veh. Code, § 23222). The evidence adduced at the suppression hearing does not carry the People's burden of proving probable cause to justify the warrantless search. The prosecution presented no evidence that petitioner was impaired; no sobriety test was administered,

7

there was no evidence petitioner drove erratically before the stop,[2] and neither detective testified to observing any indicia of petitioner being intoxicated. Likewise, there was no evidence either detective observed an open container before petitioner's car was searched.

The fact that there was a smell of burnt marijuana emanating from the car was insufficient to support either theory of probable cause in this case. Neither detective could determine if the marijuana was freshly burnt, removing any support for an inference that petitioner was smoking the marijuana while driving. As we found in *Johnson*, "the facts in this case comprised of a parked car missing a registration tag and having an expired registration, the odor of marijuana emanating from the car, the observation of a tied baggie containing 'a couple grams' of marijuana in the car's center console, and defendant's actions outside the car in resisting the officers. The totality of these circumstances did not amount to a 'fair probability that contraband or evidence of a crime" would be found in defendant's car.' [Citation.]" (*People v. Johnson, supra*, 50 Cal.App.5th at p. 635.)

Here, there is even less evidence in support of probable cause than in *Johnson*, as the detectives did not see any container of marijuana before initiating the warrantless search of petitioner's car. The Attorney General attempts to distinguish *Johnson* by noting it addressed the smell of burnt marijuana as evidence of an open container violation and not as evidence of driving under the influence. This is unavailing. The smell of burnt marijuana in a car, where there is no indication it had been recently smoked within, cannot by itself provide probable cause of driving under the influence of marijuana. Since there is insufficient evidence of probable cause to support the

---

[2] Although Detective Sareeram testified that petitioner drove an unusually long distance to pull over, there was no evidence that this fact supports any inference of impaired driving.

8

warrantless search, the automobile exception is inapplicable and the rulings below to the contrary are incorrect.

## II

### *Invalid Inventory Search*

Inventory searches of police-impounded cars are "a well-defined exception to the warrant requirement of the Fourth Amendment." (*Colorado, supra*, 479 U.S. at p. 371 [93 L.Ed.2d at p. 745].)  The Supreme Court has recognized that police officers have a legitimate interest in taking an inventory of the contents of vehicles they legally impound "to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." (*Id*. at p. 372 [93 L.Ed.2d at pp. 745-746].)  Nonetheless, it is well established that an inventory search must not be a "ruse for a general rummaging in order to discover incriminating evidence." (*People v. Williams* (1999) 20 Cal.4th 119, 126.)

"To determine whether a warrantless search is properly characterized as an inventory search, 'we focus on the purpose of the impound rather than the purpose of the inventory.' [Citation.]" (*People v. Lee* (2019) 40 Cal.App.5th 853, 867.)  (' "[A]n inventory search conducted pursuant to an unreasonable impound is itself unreasonable.' [Citation.]" (*People v. Torres* (2010) 188 Cal.App.4th 775, 786 (*Torres*).)  "The decision to impound the vehicle must be justified by a community caretaking function 'other than suspicion of evidence of criminal activity' [citation] because inventory searches are 'conducted in the absence of probable cause' [citation]." (*Id*. at p. 787.)  "Whether 'impoundment is warranted under this community caretaking doctrine depends on the location of the vehicle and the police officers' duty to prevent it from creating a hazard to other drivers or being a target for vandalism or theft.' [Citation.]" (*People v. Williams* (2006) 145 Cal.App.4th 756, 761.)

"Police officers may exercise discretion in determining whether impounding a vehicle serves their community caretaking function, 'so long as that discretion is

exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity.' [Citation.] Statutes authorizing impounding under various circumstances 'may constitute a standardized policy guiding officers' discretion [citation], though 'statutory authorization does not, in and of itself, determine the constitutional reasonableness of the seizure' [citation]." (*Torres, supra*, 188 Cal.App.4th at p. 787.) California law authorizes an impound "[when] an officer arrests a person driving or in control of a vehicle for an alleged offense and the officer is, by this code or other law, required or permitted to take, and does take, the person into custody." (Veh. Code, § 22651, subd. (h)(1).)

We assume there was a valid policy in place governing the impound decision. Although the evidence regarding such a policy was minimal; the detectives testified there was a policy to allow impounds for driving on a suspended license at the officer's discretion; that plus the general authority to impound following a custodial arrest satisfies the policy requirement.

What is not present is an adequate community caretaking function served by the impound here. There was no evidence petitioner's car blocked traffic or was at risk of theft or vandalism; the Impala was legally parked in a parking space in a public parking lot. Although the detectives testified it was common (and thus part of the policy) to tow when the driver had a suspended license to prevent more driving under a suspended license, this policy does not provide a community caretaking function for the tow. The detectives did not afford petitioner the opportunity to call someone to drive his car to another location. More importantly, the evidence shows the impound decision was motivated by an investigatory purpose.

Asked what type of search of the Impala he was planning to conduct, Detective Sareeram replied: "At that time it was an inventory search incident to a tow, but the burnt marijuana that I could smell also weighed heavily on my decision to search the vehicle. [¶] At that point I didn't know what Mr. Blakes' sobriety was, whether the

10

burnt marijuana smell was fresh and had been put out during the time that I was trying to stop him." The investigative pretext for the search is reinforced by Detective Sareeram's reason for not letting petitioner call for someone to pick up his Impala:

"So the circumstances for me in this particular traffic stop were I could smell burnt marijuana coming from the vehicle, and in talking to Mr. Blakes, he was not very forthcoming. In fact, he refused to answer any questions about marijuana being inside the vehicle, and when I asked him to step out of the vehicle, I encountered an unusual resistance in stepping out of the vehicle. [¶] And in addition to that, when I told him I was going to be patting him down for weapons, he resisted that, as well. [¶] So the totality of the circumstances made me feel as though something else was going on besides just a suspended license."

This is an investigatory pretext for an impound search. Citing *Whren v. United States* (1996) 517 U.S. 806 [135 L.Ed.2d 89], the Attorney General asserts and the magistrate ruled pretext to an impound search is irrelevant so long as there was an objective community caretaking justification for the impound decision, here preventing an unlicensed driver from returning to his car and driving it. This is wrong. *Whren* establishes that an officer's motivations or intent are irrelevant to whether probable cause for a search or seizure exists, as probable cause is determined objectively. (See *id*. at p. 813 [135 L.Ed.2d at p. 98] ["Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis"].) *Whren* itself notes its reasoning is irrelevant in the context of impound searches; "we never held, outside the context of inventory search or administrative inspection . . . , that an officer's motive invalidates objectively justifiable behavior under the Fourth Amendment . . . ." (*Id*. at p. 812 [135 L.Ed.2d at p. 97]; accord *Torres, supra*, 188 Cal.App.4th at p. 791.) The United States Supreme Court has thus invalidated impound searches based on the officer's subjective motivations for the impound even though objective grounds to impound the vehicle existed. (See *Colorado,*

11

*supra*, 479 U.S. at pp. 372, 376 [93 L.Ed.2d at pp. 745-746, 748]; *South Dakota v. Opperman* (1976) 428 U.S. 364, 376 [49 L.Ed.2d 1000, 1009].)

"The relevant question is whether the impounding was subjectively motivated by an improper investigatory purpose." (*Torres, supra*, 188 Cal.App.4th at p. 791.) The answer to that question here is "yes." The search here was motivated by a desire to further investigate petitioner and the car he drove for evidence of criminal activity. That warrantless search was not supported by probable cause and the impound rationale was no more than a pretext to justify the search. The magistrate and trial court erred in denying the suppression motion.

DISPOSITION

Let the peremptory writ of mandamus issue directing respondent court to vacate its March 19, 2021 order denying the suppression motion and enter an order granting the motion.

 

_____,
BLEASE, Acting P.J.

We concur:

_____,
ROBIE, J.

_____,
DUARTE, J.

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| DERRICK J. BLAKES,<br><br>       Petitioner,<br><br>  v.<br><br>THE SUPERIOR COURT OF SACRAMENTO COUNTY,<br><br>       Respondent.<br><br>THE PEOPLE,<br><br>       Real Party in Interest. | C093856<br><br>(Super. Ct. No. 19FE022202)<br><br><br>ORDER CERTIFYING OPINION FOR PUBLICATION |

THE COURT:

The opinion in the above-entitled matter filed on November 24, 2021, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

1

EDITORIAL LISTING

ORIGINAL PROCEEDING in mandate.  Petition granted after alternative writ issued.  Timothy M. Frawley, Judge.

Steven M. Garrett, Public Defender, John W.H. Stoller and Gina Thanh Le, Assistant Public Defenders.

No appearance for Respondent.

Rob Bonta, Attorney General, Michael P. Farrell, Assistant Attorney General, Michael A. Canzoneri and Clifford E. Zall, Deputy Attorneys General, for Real Party in Interest.

BY THE COURT:

_____,
BLEASE, Acting P.J.

_____,
ROBIE, J.

_____,
DUARTE, J.

2